UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE DINOME,

                Plaintiff,

– against –

CORDIS US CORP., CORDIS CORPORATION, DENNIS WHALEN, *and* DAVID HUNT,

                Defendants.

**OPINION & ORDER**

23-CV-11173 (ER)

RAMOS, D.J.:

      Michele DiNome brings this action against Cordis US Corporation and Cordis Corporation (collectively, "Cordis"), and Cordis executives Dennis Whalen and David Hunt (collectively, "Defendants), for allegedly subjecting her to a hostile work environment, discriminating against her on the basis of age and sex, retaliating against her after she reported Cordis' illegal and unsafe activity, and failing to provide her with reasonable accommodations for her disability. DiNome alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the New York Labor Law § 740 ("NYLL"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the court is Defendants' motion to partially dismiss the Amended Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants are moving to dismiss only the NYLL retaliation claim and the ADA, NYSHRL, and NYCHRL failure to accommodate claims. For the reasons set forth below, the motion is GRANTED.

I.  **BACKGROUND**

   A. **Statement of the Facts**

   *1. The Parties*

DiNome is an experienced clinical sales professional who previously worked for, among other medical device companies, Philips-IGT-D ("Philips"), before she was hired as an associate manager at Cordis. ¶¶ 13, 16, 19.[1] Cordis is a global leader in the development and manufacture of medical devices for diagnostics and interventional procedures to treat coronary and peripheral vascular diseases. ¶ 14; *see also* Doc. 19-1 at 3. Whalen is and was a supervisor at Cordis during DiNome's employment. ¶ 11. Hunt is a former vice president of sales for Cordis who worked during DiNome's employment. ¶¶ 12, 30.

   *2. Employment with Cordis*

On June 1, 2022, DiNome was hired by defendant Whalen and started at Cordis the same day as another woman named Caroline Casey ("Casey"). ¶ 19. In her Amended Complaint, DiNome alleges another associate, Jon Ketz ("Ketz"), trained her on only one case before directing her to begin "in-servicing" medical devices without supervision.[2] ¶ 24. She expressed her discomfort in using the devices without adequate training to Cordis' senior management and Whalen several times throughout the summer of 2022.[3] ¶ 22. In addition, according to DiNome, Cordis required fellows[4] to work on five to seven cases with Cordis representatives before being permitted to use Cordis' medical devices without the participation of a Cordis representative. ¶ 24. However, DiNome alleges this protocol was being monitored only "loosely" by Casey.[5] *Id.* On one

---

[1] Unless otherwise noted, citations to "¶__" refer to the Amended Complaint, Doc. 18.

[2] DiNome does not explain what "in-servicing" means.

[3] DiNome does not provide any dates or additional facts explaining who she spoke to regarding her concerns of Cordis' purportedly unsafe training protocols.

[4] DiNome does not describe what fellows are, or their responsibilities.

[5] DiNome does not specify whether she reported her concerns regarding Cordis' protocol for training new fellows to Cordis management.

occasion, she recalled a device was not deploying correctly during a procedure on a patient. *Id.* The malfunction required the application of manual pressure to the patient's groin. *Id.* When DiNome asked to follow the patient to the postoperative unit, where patients are monitored after a procedure, she was warned by Casey that doing so would draw negative attention to the Cordis device. *Id.* DiNome suggests this was evidence Cordis condoned unsafe patient practices. *Id.*

    3. *Dr. Krishnan's Lab*

DiNome further alleges that between August 4 and 18, 2022, Dr. Krishnan, a doctor at Mount Sinai Hospital, suggested that he would use one of Cordis' medical devices, Mynx Control, [6] in return for a $50,000 donation to his educational grant/symposium. ¶ 23. DiNome was uncomfortable with this suggestion and reported Dr. Krishnan's request to Cordis senior management and Whalen. *Id.* "It appeared [to DiNome] that Cordis… was not familiar" with Dr. Krishnan's history of requiring medical device companies donate to his grant/symposium in exchange for using their products.[7] ¶ 25. On August 12, 2022, Dr. Krishnan asked DiNome and Casey to train fellows on how to use the Mynx Control device at his lab. *Id.* When they arrived, another doctor, Dr. Srinivas Dukkpati, told DiNome that Dr. Krishnan specifically instructed him not to use the Mynx Control device. *Id.* DiNome then disclosed "certain experiences she had with Dr. Krishnan" and the complaints she made about him at her prior employer, Philips, to Casey. *Id.* It appeared to DiNome that Casey was also unfamiliar with Dr. Krishnan's requirement that medical device companies donate to his grant/symposium. *Id.* DiNome alleges she was concerned that Dr. Krishnan was directing doctors at Mount Sinai to avoid using the Mynx Control device either to put pressure on Cordis to participate in his kickback scheme or to retaliate against her for

---

[6] DiNome does not further explain what the Mynx Control device is.

[7] When she left Philips, DiNome reported in writing unethical conduct she witnessed, including Dr. Krishnan's kickback scheme which required medical device companies donate to his grant/symposium to have their products used in his lab. ¶ 25.

3

having reported him and the kickback scheme he was running at Philips. *Id*. After the lab visit, Casey was approached by another doctor, Dr. Mark Miller, who asked her who DiNome was.[8] ¶ 26. Casey provided him with information about DiNome's role and revealed that DiNome was concerned about Dr. Krishnan retaliating against her for having made complaints at Philips regarding his alleged kickback scheme. *Id*. At some point thereafter, Whalen approached DiNome yelling about how the [Krishnan] account was worth $1 million, and asked her to stay out of the catheterization lab and concentrate on interventional radiology ("IR") and operating room ("OR"). *Id*. DiNome alleges Whalen was angry with her for "not going along with the kickback scheme and being so vocal about it both with [Philips] and Cordis."[9] *Id*.

    4. *The Retaliation*

After reporting her concerns about the inadequate training she purportedly received and Dr. Krishnan's suggestion that Cordis donate to his grant/symposium, DiNome alleges that her team thereafter stopped supporting her when "it became clear Cordis was the party retaliating against her" for the complaints she made at Philips. ¶¶ 26–27. Specifically, Ketz initially refused to train her on one of Cordis' new medical devices when a client expressed interest in using it. ¶ 27. DiNome also alleges that Whalen pressured other female employees to suggest that she leave the job. ¶ 28. For example, Amanda Nixon, who had previously been helpful to her, was "clearly" asked to be rude to her when she told DiNome, "[w]ell you'd make $175,000 a year as a physician's assistant."[10] *Id*.

During the week of September 25, 2022, DiNome expressed interest in applying for a new role within the company. ¶ 28. In a conversation with DiNome discussing the

---

[8] The Amended Complaint does not offer any additional information about who Dr. Mark Miller is and what relationship, if any, he has with the relevant parties in this case.

[9] DiNome never alleges that she reported Dr. Krishnan's kickback scheme to Cordis management or Whalen.

[10] The Amended Complaint does not provide any additional details about the context of this statement.

4

new role, Whalen "provided feedback that… [DiNome] still had areas for development in her current role, including '[b]usiness [a]cumen." Doc. 24-1 at 2. [11] According to DiNome, Whalen allegedly "manipulated her words" and referenced a time she submitted a report late. ¶ 28. In response, DiNome raised her voice at Whalen and was consequently given a "General Corrective Action Form" for violating Cordis' code of conduct. *Id.* The warning suggested that DiNome "became very frustrated" and was "aggressively coming back at [Whalen]." Doc. 24-1 at 2. DiNome alleges that Whalen "admitted her negative review was due to the relationship and/or issues at Mount Sinai." ¶ 29. DiNome sent a clarification email to Whalen asking what she did wrong specifically as it related to Mount Sinai. *Id.* On September 27, Whalen replied via email, stating that the warning was related to their exchange—during which she raised her voice at him—and had nothing to do with Mount Sinai, Mount Sinai physicians, or any other account. *Id.* Despite Whalen's email, DiNome alleges that the negative performance review was *actually* given in retaliation for speaking out about Mount Sinai and its physicians. *Id.*

5. *DiNome's Termination*

On October 12, 2022, DiNome was working on an OR case when she learned her father died. ¶ 30. DiNome took three business days of bereavement leave before resuming work on October 18. *Id.* On October 19, DiNome emailed another Cordis employee, Adelaida Torres-Rodriguez ("Torres-Rodriguez"), "[m]y dad passed away suddenly late last week… Just wanted to let you know in case I seem distracted that is the reason." *Id*; *see also* Doc. 24-2 at 2. DiNome allegedly also told Whalen that she may seem "distracted" due to her father's passing. ¶ 30. On October 20, DiNome emailed Hunt, suggesting that she had not completed an assignment because her father collapsed

---

[11] In considering a motion to dismiss, this Court may consider facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Here the Court considers the written violation because it was specifically incorporated by reference in the Amended Complaint.

5

without warning. *Id*. During a training session for an upcoming exam required for her position at Cordis, DiNome alleges she knew she was not in the best state and repeatedly made her depression, anxiety, and other mental health conditions "obvious."[12] *Id*. On October 21, DiNome took the exam but did not pass. ¶¶ 30–31. Afterwards, DiNome allegedly called Torres-Rodriguez and reminded her of her father's passing. ¶ 31. Torres-Rodriguez asked her if she felt okay to retake the exam and DiNome agreed to proceed. *Id*. On October 25, DiNome retook the exam. *Id*. DiNome alleges that during the exam, when asked if she was okay, she responded, "I just need to stop crying every day." *Id*. DiNome failed the exam for the second time and was terminated the next day, October 26. ¶¶ 31–32. The same day of her termination, Cordis allegedly received a $68,000 order from the Mount Sinai Catheterization Lab. ¶ 32. DiNome asserts that Dr. Krishnan ordered the devices because Cordis donated $50,000 to his October 2022 symposium.[13] ¶26.

### B. Procedural History

DiNome filed this action on December 24, 2023. Doc. 1. She alleges six counts: (1) age and sex discrimination and hostile work environment in violation of Title VII; (2) age discrimination in violation of the ADEA; (3) age and sex discrimination and hostile work environment in violation of the NYSHRL; (4) age and sex discrimination and hostile work environment in violation of the NYCHRL; (5) retaliation in violation of NYLL; and (6) failure to provide reasonable accommodation in violation of the ADA, NYSHRL, and NYCHRL. The case was initially assigned to Judge Paul A. Crotty. On March 5, 2024, Defendants requested a pre-motion conference seeking leave to file a motion to dismiss Plaintiff's fifth claim for retaliation and sixth claim for failure to provide reasonable accommodations. On March 13, 2024, Plaintiff filed her response

---

[12] DiNome does not provide any information explaining how she made her depression, anxiety, and other mental health conditions obvious, or to whom.

[13] DiNome does not provide a date for when Cordis donated to Dr. Krishnan's October 2022 symposium.

indicating her intent to file an Amended Complaint by April 15, 2024.  Doc. 15.  On March 26, 2024, Judge Crotty directed the parties to confer and submit an agreed-upon briefing schedule for Defendants' partial motion to dismiss, which was filed on March 29, 2024, Doc. 16, and Judge Crotty adopted it on April 2, 2024.  Doc. 17.  On April 15, 2024, Plaintiff filed an Amended Complaint alleging the same six causes of action, Doc. 18, and that same day, the case was reassigned to the Honorable Edgardo Ramos.  On April 29, 2024, Defendants filed a partial motion to dismiss Counts V and VI of the Amended Complaint, alleging retaliation in violation of NYLL, and failure to provide reasonable accommodation in violation of the ADA, NYSHRL, and NYCHRL, respectively.  Doc. 19-1.

## II.     LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937(citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  Even though "a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination" to survive a motion to dismiss, "it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible."  *E.E.O.C. v. Port Authority of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680, 129 S.Ct.

7

1937).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

### III.    DISCUSSION

#### A.  Retaliation Claim

DiNome alleges that defendant Cordis retaliated against her in violation of New York's whistleblower law, NYLL § 740.  ¶¶ 75–82.  Cordis argues DiNome's allegations are conclusory at best and lack sufficient particularity to support an inference that Cordis engaged in unsafe or unlawful conduct pursuant to the NYLL.  Doc. 19-1 at 7.  Cordis also insists that DiNome's NYLL claim must be dismissed because the Amended Complaint refers only to ethical violations of a third-party physician, Dr. Krishnan, and not any wrongdoing by Cordis.  *Id.* at 7–8.

To plead a *prima facie* case of retaliation, DiNome must first sufficiently allege that "[s]he disclosed or threatened to disclose an activity, policy, or practice that [Cordis] was engaging in, which [s]he reasonably believed either violated a law, rule, or regulation, or posed a substantial and specific danger to public health or safety."  *Komorek v. Conflict International Inc.*, No. 22 Civ. 9467 (ER), 2024 WL 1484249, at *6 (S.D.N.Y. Mar. 29, 2024); *see also* NYLL § 740(2)(a).  Then DiNome must "point to a retaliatory, adverse action taken by the employer in response to that complaint."  *Thacker v. HSBC Bank USA, N.A.*, No. 22 Civ. 7120 (GHW), 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023).  The statute also "'requires some causal connection between an adverse… action'" taken by the employer "'and a report of illegal activity'" by the employee.  *Id.* (quoting *Varughese v. Mount Sinai Medical Center*, No. 12 Civ. 8812, 2015 WL 1499618, at *68 (S.D.N.Y. Mar. 27, 2015).

1. *DiNome Sufficiently Pleads She Reported an Activity that Cordis Engaged in that Posed a Substantial Risk to the Public*

In the Amended Complaint, DiNome alleges two instances where she reported conduct to Cordis that she allegedly believed either violated a law or posed a substantial danger to the public health or safety: (1) that Cordis permitted its employees to use medical devices on patients without adequate training and (2) that Dr. Krishnan suggested Cordis donate to his grant/symposium in exchange for using Cordis medical devices. ¶¶ 22–24.

The Amended Complaint does adequately allege that DiNome disclosed to Whalen and other unidentified "senior managers" a practice Cordis engaged in—namely, permitting employees to use its medical devices on patients without adequate training— that she believed posed a danger to the public. ¶ 22. Specifically, she alleges that she "spoke… up several times" about only being trained once before being permitted to "in-service" the medical devices without supervision on patients and with fellows. ¶¶ 22, 24. The Court finds that DiNome sufficiently pleads she reported an activity she believed posed a "danger to public health or safety" within the meaning of the § 740. *See Duarte v. St. Barnabas Hospital*, 265 F. Supp. 3d 325, 355 (S.D.N.Y. 2017) (concluding that plaintiff had sufficiently implicated a "danger to the public and safety" within the meaning of § 740 when she made complaints to her supervisor "about mental health treatment and therapy decisions being made on the basis of reimbursement rates").

A closer call is whether DiNome's complaint regarding Dr. Krishnan would qualify as a protected activity under the NYLL. Cordis argues that the complaint fails to identify a specific practice or activity that Cordis engaged in that she believed was in violation of the law, as required to satisfy the first element of a NYLL retaliation claim. Doc. 23 at 2. The Court notes that for pleading purposes, "[t]he plain language of Labor Law § 740(2)(a) does not impose any requirement that a plaintiff identify the specific 'law, rule or regulation' violated as part of a section 740 claim." *Webb-Weber v.*

9

*Community Action for Human Services, Inc.,* 23 N.Y.3d 448, 452, 15 N.E.3d 1172, 1174 (2014) (quoting NYLL § 740(2)(a)). Courts in this District have suggested that to state a plausible a claim, the plaintiff is only required to demonstrate she had a good faith, reasonable belief that the employer was engaging in a practice that was unlawful. *See Komorek*, 2024 WL 1484249, at *1–2; *see also Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

  Here, the Court concludes that the complaint DiNome made regarding Dr. Krishnan does not sufficiently implicate an activity or practice Cordis engaged in that was unlawful. In the Amended Complaint, for example, DiNome alludes to having told Cordis about the purportedly unlawful kickback scheme, suggesting that Whalen did not appreciate her "not going along with the kickback scheme and being so vocal about it at her prior employer and with Cordis" and because of "the… potential loss in business." ¶ 26. In addition, DiNome alleges Cordis did participate in the kickback scheme "exactly as …[she] had warned." *Id.* However, DiNome never explicitly alleges that she reported Dr. Krishnan's kickback scheme to Cordis or that she believed Cordis participated in it. Instead, DiNome alleges that she disclosed to Casey "certain experiences she had with Dr. Krishnan at a prior employer… including his requirement that device companies donate to his symposium to have their product used" and that Casey "later" revealed this information to Dr. Mark Miller before she began experiencing retaliation. ¶¶ 25–26. This is insufficient to demonstrate DiNome reported an activity she believed Cordis was engaging in that was unlawful.

  DiNome later attempts to amend her argument in her Opposition. Specifically, she argues for the first time that she "reported the Defendants were engaging in the same unlawful activity she witnessed at a prior employer, which included donating to Dr. Krishnan's symposium so the product can be used" and that she "reported Defendants paying $50,000 to get 68,000 of business." Doc. 22 at 2. However, "it is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss."

10

*O'brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). Accordingly, only the complaint DiNome made regarding Cordis' training protocol is sufficient to demonstrate that she engaged in a protected activity as required to satisfy the first element of a NYLL retaliation claim.

    2. *DiNome Plausibly Pleads She Experienced Retaliation*

With respect to the second element, DiNome alleges Whalen and other individuals on her team retaliated against her after the "Mount Sinai reports." ¶¶ 27–29. However, it is unclear which specific employee retaliated against her and in response to which specific allegation of wrongdoing she reported. Furthermore, it is unclear whether certain of the individuals to whom she ascribes retaliatory actions or statements would qualify as employers under the NYLL for the purposes of a retaliation claim. *See* NYLL § 740(1)(b) (defining an employer as "any person, firm, partnership, institution, corporation, or association that employs one or more employees"); *see also Komorek*, 2024 WL 1484249, at *5.

The Second Circuit uses an "economic reality" test to establish whether an individual qualifies as an employer in NYLL cases. *Komorek*, 2024 WL 1484249, at *5. Under this test, the Court "asks whether the alleged employer: (1) could hire and fire employees; (2) supervised employee work schedules and conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Id.*; *see also Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)). The Court emphasizes that the "test encompasses the totality of the circumstances" and does not depend on satisfying each element. *Herman v. RSR Securities Services. Ltd.*, 172 f.3d 132, 139 (2d Cir. 1999).

In the Amended Complaint, DiNome asserts that "the whole team stopped supporting [her]," that Ketz refused to help her with "in-servicing," and that Nixon was "rude" to her. ¶ 27. However, DiNome fails to allege any additional facts demonstrating whether these individuals had any power over her employment to qualify as employers

11

under the economic reality test. However, DiNome does plausibly plead Whalen had sufficient control over her and her employment to qualify as her employer. Specifically, she alleges he hired her, determined the work assignments she received, and issued her a written disciplinary warning. ¶¶ 19, 21, 28. In addition, she alleges Whalen was in a position to offer her a promotion, suggesting she "did not have the business acumen" for a role she was interested in. ¶ 28. Moreover, DiNome alleges that she was fired either because "Dr. Krishnan requested her dismissal or Whalen simply did not want to risk another ethics report," suggesting Whalen had the authority to fire DiNome as well. ¶ 26. Accordingly, DiNome has adequately pleaded that the retaliatory actions of Whalen can be attributed to Cordis for the purposes of her NYLL retaliation claim.

The issue, however, is whether Whalen's actions constitute retaliation under the NYLL. The statute defines a prohibited retaliatory action as "an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate against any employee or former employee exercising his or her rights under this section." NYLL § 740(1)(e).

DiNome alleges that following the reports she made to Whalen about Cordis' inadequate training protocol and Dr. Krishnan, Whalen also learned about the complaints she made at Philips and began retaliating against her.[14] ¶¶ 22, 26–29. In the Amended Complaint, for example, DiNome alleges that Whalen yelled at her "[o]bviously… about the… potential loss in business because he did not appreciate [DiNome] not going along with the kickback scheme and being so vocal about it both with her prior employer and with Cordis." ¶ 26. DiNome further alleges that Whalen asked other female employees to be "rude" to her and suggest she leave the job. ¶ 28. On September 13, 2022, during a meeting regarding a new role DiNome was interested in, she alleges that she became

---

[14] It is not clear from the Amended Complaint when Whalen found out about the complaint DiNome made at Philips. However, DiNome suggests that the retaliation began after she told Casey on August 12, 2022, who then "later" disclosed that information to Dr. Mark Miller. ¶ 26.

12

"stern with Whalen" when he had "manipulated her words in clear retaliation for the Mt Sinai incident," resulting in him giving her a negative performance review. ¶ 28. While the report suggests she violated Cordis' code of conduct when she "became frustrated" and was "aggressively coming back at [Whalen]" when he "provided feedback that… [DiNome] still had areas of improvement," DiNome alleges that Whalen had "admitted" to her that it was given in connection to her "issues with Mount Sinai" and "pointing out unlawful and unethical practices." Doc. 24-1 at 2; ¶¶ 28–29.

While some of these actions, such as the allegation that Nixon was rude to her, could be likened to "petty slights or minor annoyances that often take place at work," courts in this District have concluded that negative performance reviews "give rise [to a] plausible inference… that [a supervisor-defendant] participated in legally actionable retaliatory conduct …" *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 69, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006); *Holohan v. Newmark & Company Real Estate, Inc.*, No 18 Civ. 06275, 2019 WL 4743883, at *5 (S.D.N.Y. Sept. 16, 2019) (finding that a negative performance review that preceded plaintiffs termination gave rise to an inference of retaliation); *see also Brown v. County of Westchester*, No. 22 Civ. 06146 (PMH), 2024 WL 21937, at *11 (S.D.N.Y. Jan. 2, 2024) (concluding that defendants retaliated against plaintiff when they allegedly fabricated reasons to issue negative performance review after she made a report of discrimination); *see also Vega v. Hempstead Union Free School District*, 801 F.3d 72, 91 (2d Cir. 2015) (noting that allegations that an employer set its employee up to look bad before issuing a negative performance review gave rise to an inference of retaliation). Here, taking into account the totality of the circumstances, it is at least plausible that Whalen's negative review was given in retaliation for DiNome's "issues with Mount Sinai" and the complaints she had made at Philips. ¶¶ 26, 28–29; *see also* Doc. 24-1 at 2.

DiNome also alleges that her termination was an act of retaliation. ¶¶ 26, 32. Courts in the Second Circuit have consistently found employment termination to be the

13

most obvious example of a retaliatory action given it ends employment. *See* NYLL §740(e); *see also Ramirez v. Temin & Company, Inc.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *5 (S.D.N.Y. Sept. 24, 2021*); see also Borreo v. American Express Bank Ltd.*, 533 F. Supp. 2d 429, 436 (S.D.N.Y. 2008). The Court concludes DiNome has sufficiently plead she experienced retaliation, satisfying the second element for a NYLL claim.

3. *DiNome Adequately Establishes a Causal Connection*

As to the causation element, Cordis argues that the Amended Complaint fails to identify a causal nexus between the report she made about Cordis' inadequate training protocol and the retaliation she suffered. Doc. 19-1 at 9. DiNome contends that an inference of causation can be made due to the temporal proximity between the report she made and the retaliation she experienced. Doc. 22 at 5–6.

Indeed, "a causal connection may be shown 'indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *Percy v. Local 412 of CSEA, Inc., Local 1000, AFSCME AFL-CIO*, No. 16 Civ. 5304 (NSR), 2022 WL 704904, at *9 (S.D.N.Y. Mar. 9, 2022); (citing *Manoharan v. Columbia University College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988). However, district courts within the Second Circuit have consistently held that "'the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.'" *Percy,* 2022 WL 704904, at *9; (citing *Caddick v. Personnel Company I LLC*, No. 16 Civ. 7326 (ALC), 2018 WL 3222520, at *8 (S.D.N.Y. 2018)); *see also Hussein v. Hotel Employees & Restaurant Union, Local 6*, No. 98 Civ. 9017(SAS), 2002 WL 10441 (S.D.N.Y. Jan.3, 2003) (finding that the passage of more than two months defeats any retaliatory nexus).

14

Here, DiNome alleges that she reported her concerns about Cordis' inadequate training protocols "during the summer of 2022."[15] ¶ 22.  DiNome alleges she then began experiencing retaliation—namely, that Whalen yelled at her,[16] that Whalen dissuaded her from applying to a job during a meeting on September 13, that she received a negative performance review on September 23, 2022, and that she was terminated on October 26. ¶¶ 26, 28; 32; *see also* Doc. 24-1 at 2.  Given the Court does not know whether one month or four had passed between the protected activity and the retaliatory actions, the Court cannot make an inference of causation through temporal proximity.  The Court concludes that DiNome has failed to sufficiently plead causation and therefore Defendant's motion to dismiss Plaintiff's NYLL retaliation claim is GRANTED.

### B. Failure to Accommodate Claim

DiNome alleges that Defendants Cordis, Whalen, and Hunt, violated the ADA, NYSHRL, and NYCHRL by failing to provide a reasonable accommodation for her anxiety, distress, depression, and other mental health conditions following her father's death. ¶¶ 83–90.  Defendants insist that DiNome's grief does not qualify as a disability under the ADA, NYSHRL or NYCHRL, and that even if the Court found she was suffering from a qualifying disability, Defendants did not have notice of her impairment. Doc. 19-1 at 10–14.

Failure to accommodate claims are analyzed under the burden-shifting framework that requires a plaintiff to plead only the facts necessary to establish a *prima facie* case. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *see also Zuckerman v. GW Acquisition LLC*, No. 20 Civ. 8742 (VEC), 2021 WL 4267815, at *9 (S.D.N.Y. Sept. 20, 2021).  To establish a *prima facie* case for failure to accommodate, DiNome must allege each of the following:  (1) she is a person with a disability under the meaning of

---

[15] DiNome does not provide a specific date for when she reported her concerns that Cordis' training practice posed a danger to the public.

[16] DiNome does not provide a specific date for when Whalen yelled at her.

the ADA, NYSHRL, or NYCHRL; (2) Defendants had notice of her disability; (3) with reasonable accommodation, DiNome could perform the essential functions of the job at issue; and (4) Defendants refused to make such accommodations. *Vega v. Department of Education*, No. 19 Civ. 6963 (ER), 2020 WL 6727803, at *5 (S.D.N.Y. Nov. 16, 2020). "Courts apply the same standard for failure to accommodate cases under the ADA, NYSHRL, and NYCHRL." *Arazi v. Cohen Brothers Realty Corporation*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *6 (S.D.N.Y. Mar. 28, 2022) (citing *Rodriquez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

    *1. DiNome's Failure to Accommodate Claim Under the ADA*

Given that the "ADA… explicitly borrows remedies set forth in Title VII, and [does not] provide for individual liability," DiNome's ADA claim can only be brought against Cordis. *Limauro v. Consolidated Edison Company of New York, Inc.*, No. 20 Civ. 03558 (CM), 2021 WL 466952, at *4 (S.D.N.Y. Feb. 9, 2021).

In order for DiNome to sufficiently plead she is a person with an ADA-qualifying mental disability, she "must allege that: (1) she suffers from mental impairment; (2) the mental impairment affects a major life activity; and (3) the impairment substantially limits the major life activity." *Zuckerman*, 2021 WL 4267815, at *10. The Equal Employment Opportunity Commission ("EEOC") has expanded upon the ADA's definition of a disability to include "any mental or psychological disorder," or "emotional or mental illness," that substantially limits the ability of an individual to perform a major activity as compared to most people in the general population. *Id.* at *25; (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

DiNome alleges that following the death of her father, she began suffering from anxiety, depression, and other unspecified mental health conditions which she repeatedly made obvious were impacting her ability to perform tasks related to her job, including studying for and passing the exam required for her continued employment with Cordis. ¶ 30. Cordis contends that DiNome fails to demonstrate any facts that would suggest her

16

mental state was anything beyond that of an individual grieving the death of a family member. Doc. 19-1 at 14. Cordis relies on caselaw in other districts that suggest grief does not constitute a disability under the ADA unless an individual is substantially limited in their ability to perform a major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii)); *see Johnson v. Boardman Petroleum, Inc.*, 923 F. Supp. 1563, 1568 (S.D. Ga. 1996); *see also Strickland v. Saint Luke's Health System*, No. 08 Civ. 00751 (DW), 2009 WL 10699763, at *4 (W.D. Mo. Dec. 23, 2009), aff'd sub nom. *Strickland v. St. Luke's Health System*, 377 F. App'x 569 (8th Cir. 2010). Here, DiNome's allegations fail to include facts from which the Court can infer the severity of her condition or the extent to which her disability limited her ability to study for and take the exam as compared to most people. Moreover, courts in the Second Circuit have specifically suggested that conclusory statements regarding trouble concentrating are insufficient to adequately allege a substantial impairment of a major life activity to qualify as an ADA disability. *Zuckerman*, 2021 WL 4267815, at *11. Given DiNome has failed to adequately plead she suffered from a qualifying ADA disability, the Court need not determine whether she has sufficiently pled the other elements of a failure to accommodate claim under the ADA. Defendant's motion to dismiss the ADA claim is GRANTED.

    2. *DiNome's Failure to Accommodate Claim Under NYSHRL & NYCHRL.*

NYSHRL defines disability as, "physical, mental, or medical impairment… which prevents the exercise of normal bodily function, … or a record of such impairment …" N.Y. Exec. Law § 292(21). NYCHRL similarly defines disability as, "any physical, medical, mental, or psychological impairment, or a history or record of such impairment ..." N.Y.C. Admin. Code § 8-102. Depression and anxiety can constitute a disability under the ADA if it substantially limits a major life activity. *See Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009). Given neither NYSHRL and NYCHRL require a showing that the disability substantially limits a major life activity and use "a

17

broader definition of disability than does the ADA," the Court will assume that DiNome has demonstrated she suffered from a "disability" under NYSHRL and NYCHRL. *Statuto*, 2024 WL 1380810, at *3; *see also Reilly v. Revlon*, Inc., 620 F. Supp. 2d 524, 542 (S.D.N.Y. 2009) (suggesting that both New York State and New York City recognize depression as a qualifying "disability" under the NYSHRL and NYCHRL); *see also Matya v. Dexter Corporation,* 250 Fed.Appx. 408, 410 (2d Cir.2007) (affirming district court decision that assumed that plaintiff who had depression had demonstrated a "disability" under the NYHRL). Accordingly, DiNome has sufficiently pled the first element of an NYSHRL and NYCHRL failure to accommodate claim.

At issue is whether DiNome has adequately pled that Defendants were on notice of her impairment or knew of her need for an accommodation. DiNome contends that "indicating" one has a mental disability constitutes notice and an accommodation request. Doc. 22 at 8. However, in making her point DiNome relies only on cases that involve plaintiffs who had made actual requests for accommodations in relation to their disabilities. Doc. 22 at 7; *see also Furman v. City of New York*, No. 07 Civ. 1014 (RRM) (JO), 2009 WL 4626706, at *10 (E.D.N.Y. Dec. 7, 2009) (concluding that a plaintiff who took the "first step" by asking his employer to come in "on some half days and get some therapy" had demonstrated he made a request for accommodation); *see also Bateman v. Project Hospital, Inc.*, No. 07 Civ. 2085 (RRM) (RML), 2009, at *12 (E.D.N.Y. Sept. 30, 2009) (finding that a plaintiff's verbal request to work from home was sufficient to raise a triable issue of fact on whether a request for accommodation was made). In her Amended Complaint, DiNome never alleges that she made a verbal or any other type of request for an accommodation.

"It is true that in cases in which the disability was known or obvious, and the employer thus knew or reasonably should have known of the need for an accommodation, an employee need not issue an express request for accommodation." *See Garcia v. Kings County Hospital Center*, No. 16 Civ. 3151 (ER), 2018 WL 389212, at *5 (S.D.N.Y. Jan.

18

11, 2018). However, the allegations in the Amended Complaint do not support an inference that DiNome's disability was known or obvious to Defendants. For instance, DiNome never alleges she explicitly told Defendants that she was suffering from anxiety or depression. Her allegations of having told Whalen she might seem "distracted," and Hunt that she hadn't performed a task related to her job because her father had passed, do not support the conclusion that DiNome's anxiety or depression was made obvious to Defendants. ¶ 30. Indeed, in response to Rodriguez-Torres' inquiry as to whether she felt okay to retake the exam, DiNome "agreed to proceed." ¶ 31. In the absence of a request, DiNome's allegations that Cordis refused to accommodate her "obvious" anxiety and depression are conclusory and unsupported. ¶¶ 85, 87. "[A]n employer cannot refuse to make an accommodation that it was never asked to make." *Dooley v. Jet Blue Airways Corporation*, 636 Fed. Appx. 16, 18–19 (2d Cir. 2015) (citations omitted); *see also Ray v. Weit*, 708 F. App'x 719, 721 (2d Cir. 2017) ("It is generally the employee's responsibility to inform her employer that she needs an accommodation."). Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL claims is GRANTED.

### C. Leave to Amend

The Second Circuit has consistently "instructed Courts not to dismiss a complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Davis v. Goodwill Industries of Greater New York & New Jersey, Inc.*, No. 15 Civ. 7710 (ER), 2017 WL 1194686, at *14 (S.D.N.Y. Mar. 30, 2017) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). The Second Circuit embodies a "'strong preference for resolving disputes on the merits'" pursuant to Federal Rule of Civil Procedure 15(a)(2). *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d. Cir. 2005)). Here, DiNome requests another opportunity to further amend her Complaint with the Court's guidance. Doc. 19-1 at 8. Because it is not yet apparent that

19

another opportunity to amend would be futile, the Court will permit DiNome to replead the dismissed claims.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' partial motion to dismiss the Amended Complaint is GRANTED, without prejudice. If DiNome wishes to file a Second Amended Complaint, she must do so by September 11, 2024.

It is SO ORDERED.

Dated:   August 21, 2024
         New York, New York

                                          _____
                                          EDGARDO RAMOS, U.S.D.J.